UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE ) | | |
| COMMISSION, ) | | |
|     Plaintiff, ) | | |
| ) | | |
| V. ) | Civil No, 2:08-cv-179 | |
| ) | | |
| MARK E. SALYER, ) | | |
|     Defendant, ) | | |
| ) | | |
| SALMAR INVESTORS GROUP, LLC, ) | | |
| AND HORIZON HOLDINGS, INC., ) | | |
|     Relief defendants. ) | | |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on the motion of the Securities and Exchange Commission ("SEC" or "plaintiff") to set disgorgement and prejudgment interest, and impose a civil penalty, [Doc. 15]. The defendant, Mark E. Salyer ("Salyer"), has responded, [Doc. 20], and the plaintiff has replied, [Doc. 23]. The SEC seeks disgorgement of $5,727,757.00 plus prejudgment interest of $351,961.04[1], for a total disgorgement payment of $6,079,718.04 and seeks the imposition of a civil penalty of $130,000.00. The SEC also moves for disgorgement and prejudgment interest in the same amount against relief defendants Salmar Investors Group, LLC ("Salmar") and Horizon Holdings, Inc. ("Horizon Holdings"), jointly and severally. For the reasons which follow, the plaintiff's motion will be **GRANTED IN FULL**.

**I.    Procedural background**.

---

[1] Based on the affidavit attached to the plaintiff's motion, prejudgment interest was calculated through September 30, 2009. Upon proper motion and accompanying affidavit, the judgment will be amended to reflect the amount of prejudgment interest which accrued through the date of the instant order.

The SEC brought this action by complaint filed on June 23, 2008, to enjoin Salyer, a former registered representative with MetLife Securities, Inc., from violating the anti-fraud provisions of the federal securities laws, for declaratory relief, for disgorgement of all profits or proceeds that Salyer and the relief defendants received as a result of the acts and/or courses of conduct complained of in the complaint, along with prejudgment interests, and civil penalties, [Doc. 1]. The complaint alleged that Salyer engaged in a scheme to defraud MetLife customers by taking approximately $6,000,000.00 from MetLife customer accounts and investing it in real estate ventures in which he had an interest.

The complaint alleged that Salyer forged customer signatures on wire transfer forms, convinced customers to invest in a company he controlled under the guise that it was a MetLife investment, falsified customer brokerage account statements and provided customers with false explanations for discrepancies in their statements, all in violation of § 17(a) of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. § 77q(a), and § 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5. *Id.*,¶¶ 2-3. Horizon Holdings is a Tennessee corporation of which Salyer is president. Salmar is a Tennessee limited liability company for which Salyer is registered agent. Salyer controlled both Horizon Holdings and Salmar and used both entities in his fraudulent conduct. *Id.*, ¶¶ 5-7. Salyer initially filed an answer declining to admit or deny the allegations contained in the complaint, citing his Fifth Amendment right against self incrimination, [Doc. 6]. Approximately a month later, Salyer filed an amended answer in which he responded to the complaint by admitting or denying the complaint's specific allegations, [Doc. 8].

On December 1, 2008, the SEC filed the verified consent of Salyer to entry of a judgment

of permanent injunction and other relief, [Doc. 10]. Without admitting or denying the allegations of the complaint, Salyer consented to the entry of judgment of permanent injunction and other relief which, among other things, permanently restrained and enjoined Salyer from violation of § 17(a) of the Securities Act and violation of § 10(b) of the Exchange Act, and Rule 10b-5, 17 C.F.R. § 240.10b-5. Salyer further agreed that the court "shall order disgorgement of ill-gotten gains, prejudgment interest thereon, and a civil penalty" pursuant to § 20(d) of the Securities Act and § 21(d)(3) of the Exchange Act. Salyer agreed that the amount of the disgorgement and civil penalty would be determined by the Court upon motion of the plaintiff, that he would be precluded from arguing that he did not violate the federal securities laws as alleged in the complaint, that for purposes of such motion, the allegations of the complaint would be accepted as and deemed true by the Court and that the Court would determine the issues raised in the motion on the basis of affidavits, declarations, sworn deposition or investigative testimony, and documentary evidence without regard to the standards for summary judgment contained in Rule 56(c) of the Federal Rules of Civil Procedure, [Doc. 10-1]. A judgment of permanent injunction and other relief as to defendant Mark E. Salyer was entered by the Court in the form agreed upon by the parties on December 3, 2008, [Doc. 11].

Defendants Salmar and Horizon Holdings, although properly served with the complaint, did not respond to the complaint. A motion for entry of default against the relief defendants Salmar and Horizon Holdings was filed by the plaintiff on October 8, 2009, [Doc. 13], and default was entered by the Clerk on October 27, 2009, [Doc. 14]. The instant motion was then filed on October 28, 2009.

**II.     Findings of fact**.

Pursuant to the agreement between Salyer and the SEC, the allegations of the complaint are accepted as and deemed true by the Court for the purpose of deciding the pending motion. As to Salyer then, the Court accepts all of the allegations of the complaint as true. The same is likewise the case with respect to the relief defendants, Salmar and Horizon Holdings, who have not responded to the complaint. Furthermore, Salyer has waived the entry of findings of fact. Therefore, the Court will not enter findings of fact but rather will adopt the factual allegations of the complaint as the Court's findings of fact.

**III.    Analysis and discussion.**

As noted above, Salyer has agreed that the Court shall order disgorgement, prejudgment interest thereon, and a civil penalty pursuant to § 20(d) of the Securities Act and § 21(d)(3) of the Exchange Act. Default has been entered against the relief defendants, Salmar and Horizon Holdings. The only issues remaining before the Court, therefore, are: (1) the amount of disgorgement and prejudgment interest to be ordered against Salyer, Salmar and Horizon Holdings; and (2) the amount of the civil money penalty to be ordered against Salyer. Salmar and Horizon Holdings are jointly and severally liable for the total disgorgement and prejudgment interest amounts.

Disgorgement constitutes the giving up or divestment of ill-gotten funds flowing from a defendant's unlawful conduct. *See, e.g., SEC v. Manor Nursing Centers, Inc.*, 458 F.2d 1082, 1100 (2d Cir. 1972). "In the exercise of its equity powers, a district court may order the disgorgement of profits acquired through securities fraud." *SEC v. Midwest Investments, Inc.*, 85 F.3d 630 (Table), 1996 WL 229783 at * 7 (6th Cir. 1996) (quoting *SEC v. Patel*, 61 F.3d 137, 139 (2d Cir. 1995)). "The

4

purpose of disgorgement is to force 'a defendant to give up the amount by which he was unjustly enriched' rather than to compensate the victims of fraud." *Id*. (citing *SEC v. Blavin*, 760 F.2d 706, 713 (6th Cir. 1985) (per curiam), (quoting *SEC v. Commonwealth Chem. Sec., Inc*., 574 F.2d 90, 102 (2d Cir. 1978)).

Disgorgement is designed both to deprive a wrongdoer of his unjust enrichment and to deter others from violating the securities laws. *Blavin*, 760 F.2d at 713; *SEC v. Hughes Capital Corp.*, 124 F.3d 449, 455 (3d Cir. 1997) (quoting *SEC v. First City Fin. Corp*., 890 F.2d 1215, 1230 (D.C. Cir. 1989)). "The effective enforcement of the federal securities laws requires that the SEC be able to make violations unprofitable." *Manor Nursing,* 458 F.2d at 1104.

"The principal issue, therefore, in determining the amount of disgorgement to be ordered is the amount of gain received by each defendant from the fraud. Because the remedy is equitable, and because precision of calculation will often be impossible, 'disgorgement need only be a reasonable approximation of profits causally connected to the violation.'" *SEC v. Inorganic Recycling Corp*., No. 99c.v.10159, 2002 WL 1968341 at * 2 (S. D. N.Y., Aug. 23, 2002) (internal citations omitted). The Commission bears the ultimate burden of persuasion that the disgorgement sought approximates the amount of unjust enrichment. *First City Fin. Corp*., 892 F.2d at 1232. Thus, "[o]nce the Commission has established that a defendant has violated the securities laws, the district court possesses the equitable power to grant disgorgement," and the court need not identify private parties damaged by the fraud. *Blavin*, 760 F.2d at 713.

If the Court chooses to order disgorgement, all doubts as to the amount of disgorgement "are to be resolved against the defrauding party." *SEC v. Great Lakes Equities Co.*, 775 F.Supp. 211, 214 (E.D. Mich. 1991) (citing *SEC v. First City Financial Ltd.*, 688 F.Supp. 705, 727 (D. D.C. 1988),

5

*aff'd* 890 F.2d 1215 (D.C. Cir. 1989)). All the plaintiff must show is that the amount of disgorgement it requests is a "reasonable approximation of profits casually connected to the violation." *First City Financial*, 890 F.2d at 1231. Once the Commission meets this burden, it is up to the defendant to show that the amount is not accurate. *Id.* at 1232. To this end, the defendant should show that the amount received is less than the full amount sought. *SEC v. Benson*, 657 F.Supp. 1122, 1133 (S.D. N.Y. 1987). Further, that the funds may have been subsequently invested or not used for the benefit of the perpetrator is irrelevant and does not preclude an order of disgorgement. *Id*, 657 F.Supp. at 1134.

The Commission has attached to its pleadings copies of the fraudulent wire transfers, IRA distribution requests, and personal checks pertaining to Salyer's MetLife customents, as well as certain customer affidavits attesting to the fraud. The Commission has thus established the existence of a fraudulent scheme to misappropriate funds and that the amount of disgorgement requested is a "reasonable approximation of profits casually connected to the violation." Having met the Commission's burden of persuasion, it is up to the defendant to show that the amount requested by the Commission is not accurate.

In an effort to show that the disgorgement amount requested by the Commission is not accurate, the defendant argues that the Commission's filings do "not identify what funds, if any, Salyer received individually or through the relief defendants, Salmar Investors Group, LLC or Horizon Holdings, Inc." Salyer attaches to his response a listing of Salyer's customers that identifies the transfers of funds by date, amount, type of transfer and recipient. This information is wholly irrelevant since Salyer has admitted, for the purpose of resolution of this motion, violating the anti-fraud provisions of the federal securities laws and that he engaged in a "scheme to defraud

6

at least 33 MetLife customers by taking approximately $6,000,000.00 from MetLife customer accounts and investing it in real estate ventures in which he had an interest . . ." He further admits, for the purpose of resolution of this motion, that he controlled both Salmar and Horizon Holdings and that funds were improperly transferred to those entities. It simply does not matter whether Salyer received the funds individually or whether he used one of the two controlled entities to commit his fraud. This argument lacks any merit.

Secondly, Salyer argues that the money taken "was never under his control and still exists in various accounts in the name of the individual client." This too is irrelevant since the purpose of disgorgement is to force the defendant to give up the proceeds of his fraud, rather than to compensate the victims of the fraud. *See Blavin, supra*. Salyer cannot, as the plaintiff points out, escape his obligation by suggesting that the funds he misappropriated may still exist. In addition, it makes no difference whether the funds were fraudulently transferred directly to Salyer or merely directed to the recipient or entity he identified. *See SEC v. JT Wallenbrock & Associates*, 440 F.3d 1109, 1116 (9th Cir. 2006); *Benson*, 657 F.Supp. at 1134.

Salyer has not met his burden of showing that the Commission's request for disgorgement in this case is not a reasonable approximation of the funds fraudulently obtained. The Commission's motion for a award of disgorgement in the amount of $5,727,757.00 against defendant Salyer is GRANTED.

The Commission also seeks disgorgement as to defendants Salmar and Horizon Holdings, jointly and severally. A relief defendant may "be joined to aid the recovery of relief" and "has no ownership interest in the property which is the subject of litigation." *SEC v. George*, 426 F.3d 786, 798 (6th Cir. 2005) (quoting *SEC v. Cherif*, 933 F.2d 403, 414 (7th Cir. 1991)). "Federal courts may

7

order equitable relief against [such] a person who is not accused of wrongdoing in a securities enforcement action where that person [or entity]; (1) has received ill-gotten funds; and (2) does not have a legitimate claim to those funds." *Id*. (citing *SEC v. Cavanagh*, 155 F.3d 129, 136 (2d Cir. 1998)). A court may impose joint and several liability on relief defendants where the evidence establishes the requisite close relationship between a defendant and the relief defendants and joint benefit. *Wallenbrock*, 440 F.3d at 1117 n.15.

As noted above, neither Salmar nor Horizon Holdings have responded to the Commission's complaint in this matter. At all times relevant to the allegations in the complaint, Salyer controlled both entities and he used these entities as part of his fraudulent scheme. Both entities received fraudulent transfers in violation of the federal securities laws at the direction of Salyer. The Court agrees with the SEC that it is thus appropriate for the Court to hold Salmar and Horizon Holdings jointly and severally liable for the amount of disgorgement ordered against defendant Salyer and the plaintiff's motion in that respect will be GRANTED.

The Commission also seeks prejudgment interest in the amount of $351,961.04 for the period between July 1, 2008 and September 30, 2009.[2] The Commission has calculated the prejudgment interest in accordance with the delinquent tax rate established by the Internal Revenue Service, 26 U.S.C. § 6621(a)(2). Salyer has not responded to the Commission's request for prejudgment interest and acknowledges that prejudgment interest should be ordered on the amount of the disgorgement, [See Doc. 10-1, ¶ 3].

A decision to award prejudgment interest, and at what rate, like the decision to grant

---

[2] Plaintiff's Exhibit B indicates that prejudgment interest has been calculated through September 30, 2009. The Commission's motion itself asserts that prejudgment interest has been calculated through October 28, 2009. In either event, the Commission's request for prejudgment interest is $351,961.04.

8

disgorgement, is in the broad discretion of the district court. *SEC v. First Jersey Secs., Inc.*, 101 F.3d 1450, 1476 (2d Cir. 1996). Like disgorgement, an award of prejudgment interest is intended to prevent the defendant from profiting from his illegal conduct. *SEC v. Sargent*, 329 F.3d 34, 40 (1st Cir. 2003). In other words, it prevents the defendant from receiving "what amounts to an interest free loan procured as a result of illegal activity." *SEC v. Moran*, 944 F.Supp. 286, 295 (S.D. N.Y. 1996).

The Court finds the unopposed request for prejudgment interest to be fair and equitable under the circumstances of this case, consistent with the remedial purposes of the federal securities laws and the Commission's motion for an award of prejudgment interest in the amount of $351,961.04 will be GRANTED.

Lastly, the Commission seeks a civil penalty in the amount of $130,000.00. The only argument made by Salyer with respect to the civil penalty amount is that, in light of his argument for a lesser amount of disgorgement, the "civil penalty must be recalculated." Given that the Court will order disgorgement in the amount sought by the Commission, Salyer's argument lacks any merit.

The civil penalty provisions of the securities law serve to deter violations of the law. *See SEC v. Coates*, 137 F.Supp. 2d 413, 428-29 (S.D. N.Y. 2001). Section 20(d) of the Securities Act and § 21(d) of the Exchange Act establish three tiers of civil penalties for violations of the securities laws. A third tier penalty applies where the violation involved "fraud, deceit, manipulation . . ." and "directly or indirectly resulted in substantial losses or created a significant risk of substantial losses to other persons." 15 U.S.C. § 77t(d)(1)(c); 15 U.S.C. § 78u(d)(3)(B)(iii). Under the third tier, the court may impose a penalty of up to, as relevant to this case, $130,000.00 on an individual defendant

for each violation. Salyer does not dispute that his conduct in this case merits a third tier penalty. Salyer's fraudulent scheme involved nearly $6,000,000.00 of his customer's money; it involved forgery of customer's signatures on wire transfer forms; it involved convincing other customers to invest in his real estate interest under the guise that it was a MetLife investment; it involved falsified brokerage account statements; and it involved the provision of false explanations of investments to customers. This conduct clearly merits a third tier civil penalty and the Court GRANTS the SEC's motion to order Salyer to pay a civil money penalty of $130,000.00.

**IV. Conclusion**.

For the reasons set forth above, the Court GRANTS the plaintiff's motion to set disgorgement and prejudgment interest and impose a civil penalty, [Doc. 15], and will enter a final judgment finding Salyer, Salmar, and Horizon Holdings jointly and severally liable for a disgorgement payment of $5,727,757.00, plus prejudgment interest of $351,961.04. The Court will further order a civil penalty of $130,000.00 against Salyer.

So ordered.

ENTER:

s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE
